UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60985-CIV-GRAHAM/O'SULLIVAN
[CONSENT CASE]

ULYSSES J. HUDSON,

     Plaintiff,

v.

MICHAEL CHERTOFF, as
Secretary of the United States
Department of Homeland Security,

     Defendant.
_____/

## ORDER

THIS MATTER comes before the Court on the Defendant's Motion for Summary and/or Final Judgment on Plaintiff's Claims for Front Pay and Back Pay, or Alternative Motion for De Novo Hearing to Reduce Advisory Jury Front Pay and Back Pay Awards (DE# 211, 11/21/06). Having presided at trial and having reviewed the applicable filings and law, for the reasons stated more fully below, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary and/or Final Judgment on Plaintiff's Claims for Front Pay and Back Pay, or Alternative Motion for De Novo Hearing to Reduce Advisory Jury Front Pay and Back Pay Awards (DE# 211, 11/21/06) is GRANTED in part and DENIED in part.

## INTRODUCTION

A jury returned a verdict in favor of the plaintiff's claims against the government for discrimination under the Rehabilitation Act of 1973, 29 U.S.C. 701, et seq., and for

retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et seq.  At the pretrial conference, the Court advised the parties that it would seek an advisory verdict from the jury on the issues of back pay and front pay.  At that time, the Court directed the parties to submit all evidence on the issues of back pay and front pay to the jury at trial.  The plaintiff relied on his own testimony and that of his expert, Antonio L. Argiz, CPA.  Other than cross-examination of these two witnesses, the government did not submit any evidence or rebuttal testimony as to its mitigation defense regarding the plaintiff's claims for back pay and front pay damages.  The parties were told that the Court would consider the issue of reinstatement in a hearing following the trial if the plaintiff obtained a jury verdict in his favor.  The plaintiff has advised the Court that he is not seeking reinstatement.

## FACTUAL BACKGROUND

The plaintiff was employed by the United States Customs Service and the Department of Homeland Security, Immigration and Customs Enforcement as an Intelligence Research Specialist from 1995 through February 26, 2005.  In October, 2001, the government transferred the plaintiff from the Miami office to the Office of Resident-In-Charge ("RAC") in Ft. Lauderdale.  The transfer arose from a prior accommodation request, which was litigated in Hudson v. Ridge, Case No. 01-2425-Civ-Marra ("Hudson I").

From October 2001 through October 2002, the plaintiff worked in the Airport Response Group, which is part of the RAC office in Ft. Lauderdale.  On September 11, 2002, the plaintiff wrote a memorandum to Anthony Mangione, Resident-Agent-in-

Charge, which stated that his supervisor, Kimberly Duff, was purposefully stalking and harassing him in the workplace.

On or about October 21, 2002, the defendant reassigned the plaintiff from Ft. Lauderdale to the Cyber Crimes Group in Miami while the defendant investigated the plaintiff's allegations against his supervisor. The Cyber Crimes Group in Miami consisted of supervisors and employees that were different from the Strategic/Exodus Group in Miami, where the plaintiff worked at the time of his original accommodation request in 2001.

From the date of his reassignment to Miami, October 21, 2002, to the date of his termination, February 26, 2005, the plaintiff never reported to work in Miami.  Due to his physician's directive, the plaintiff was placed on leave without pay ("LWOP") status for medical reasons from October, 2002, through March, 2004.  In a letter dated December 8, 2003, the plaintiff's physician, Douglas M. Lanes, M.D., advised the defendant that in his psychiatric opinion, the plaintiff "can continue to function as an intelligence research specialist within your Department of Homeland Security." (Jt. Trial Ex. 8)   Dr. Lanes recommended that the plaintiff be accommodated by allowing him to work from home for a year or from one the defendant's Fort Lauderdale offices "because he is having great difficulty with social anxiety about performing his work duties in the Miami District branch." (Id.)   In the same letter, Dr. Lanes advised the defendant that "[the plaintiff's] recovery has progressed to the point where it is my psychiatric opinion  that he may attempt to return to work on 01-05-04 with proper accommodation." (Id.)  At trial, Dr. Lanes testified that the accommodation meant work outside of the Miami office.  (DE#

218-5, 12/6/06, Ex. C, Trial Tr. of Lanes at pp. 39-40)  The defendant changed the plaintiff's status to absence without leave ("AWOL") from March, 2004, through November, 2004.

The plaintiff applied for one Intelligence Research Specialist position during his medical leave in May, 2003.  (Pl.'s Trial Tr. 199; 8-10 & 15-25; 200: 1-9 & 16-25; 201, 1-8; 202: 16-20; continued Pl.'s Trial Tr. 13: 23-25; 14: 1-24); (Pl.'s Dep. 13: 7-15; 174:25; 175:1-9).  The defendant cancelled the position and made a lateral non-competitive transfer, which the plaintiff alleges serves as a basis for his lawsuit.  (Pl.'s Trial Tr. 206: 14-22; Continue Pl.'s Trial Tr. 15: 3-6 & 14-25; 16: 1-5); (Pl.'s Dep. 206: 24-25; 207:1-7).

At trial, the plaintiff testified that he applied for other IRS positions with the defendant in San Francisco, San Diego, Key Largo and Homestead. (Pl.'s Trial Tr. 206:23-25; 207: 1-6 & 17-25; 208:1-2).  The plaintiff also testified that he sought a return to his prior position in Ft. Lauderdale as well as placement in other job descriptions within Customs such as EEO specialist, human resource specialist or recruitment, or any other potential accommodation. (Pl.'s Trial Tr. 207) (Trial Ex. 84 at 20) (Trial Ex. 88).  The May 2003 cancelled position was the only position for which the plaintiff has applied since October 18, 2002, and for which documentary evidence exists.

On February 26, 2005, the defendant terminated the plaintiff for his purported failure to maintain a regular work schedule and for unauthorized absence from the workplace.   The plaintiff did not make any effort to find substantially equivalent or

4

other gainful employment from the date of his termination through the conclusion of trial, November 7, 2006. (Pl.'s Trial Tr. 243:19-25; 244:1-8; Continued Pl.'s Trial Tr. 57: 8-25; 58: 1-3); (DE # 218 at 4, 12/6/06)(plaintiff concedes that the he "has not attempted to seek employment since his February 2005 termination ... [because] he had no obligation to continue [his] search [for employment] forever.").  At trial, the plaintiff testified that he is ready, willing and able to work and his disability does not preclude him from holding down full time employment.  (Pl.'s Trial Tr. 244:12 -21; Continued Pl.'s Trial Tr. 58: 4-10 &21-25).

The plaintiff's expert, Antonio L. Argiz, CPA, testified as to the amount of damages that the plaintiff incurred in the form of back pay and front pay as well as non-economic damages.  (DE# 218-5, Ex. E, Trial Tr. of Argiz pp. 34-35, 39-40)  Mr. Argiz calculated the back pay damages from October 18, 2002 through trial to be $219,064, which is the present value and includes the subtraction of the imputed median annual earnings of $47,030 that the plaintiff could have earned if he mitigated during the period from March 8, 2004 through October 2006.  Mr. Argiz testified that the plaintiff's discounted future loss was $760,514 from trial in November, 2006 through November 29, 2020.  (Id. at pp. 32-33, 34-35)  Other than the cross-examination testimony of the plaintiff and Mr. Argiz, the defendant did not submit any rebuttal testimony or evidence regarding the defendant's mitigation defense.

On November 7, 2006, the jury returned a verdict in favor of the plaintiff on his Rehabilitation Act and Title VII retaliation claims.  In its verdict, the jury recommended that the plaintiff be awarded $220,000 in back pay and $780,000 in front pay in addition

to non-economic damages in the amount of $1,500,000.

After trial and the return of the jury's Verdict, the defendant filed Defendant's Motion for Summary and/or Final Judgment on Plaintiff's Claims for Front and Back Pay, or Alternative Motion for De Novo Hearing to Reduce Advisory Jury Front Pay and Back Pay Awards.  The defendant seeks a judgment in its favor on the plaintiff's claims for back pay and front pay because the plaintiff failed to mitigate in that he did not diligently seek substantially equivalent employment.  Alternatively, the defendant requests a de novo hearing to have the Court reduce the amounts of back pay and front pay recommended by the jury.

## ANALYSIS

### I.   Standard of Review on Motion for Summary Judgment and Judgment as a Matter of Law (Fed. Rule Civ. P. 56 and 50)

The court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of meeting this exacting standard.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  That is, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

6

with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323).  In assessing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. See Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994); See also Sheckells v. Agv-Usa Corp., 987 F.2d 1532, 1534 (11th Cir. 1993); Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990); Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368 (11th Cir. 1982); Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)(per curiam).  Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain.  See Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997).

As the Supreme Court noted in Celotex,

[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  There must be evidence on which the jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 251; See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

A party is entitled to judgment as a matter of law "if there is no legally sufficient

7

evidentiary basis" for a reasonable jury to find for a plaintiff on a material element of his cause of action.  Fed. R. Civ. P. 50; Christopher v. Florida, 449 F.3d 1360, 1364 (11th Cir. 2006); see Canals v. Centro Mater, Inc., 2006 WL 2917563 at *1 (11th Cir., Oct. 12, 2006); Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1278 (11th Cir. 2005). To determine whether a party is entitled to judgment as a matter of law, the Court evaluates "all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party."  Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989).  Rule 50 allows a party to seek judgment as a matter of law on an issue after trial.

II.     The Defendant Has the Burden of Proof to Show that the Plaintiff Failed to Mitigate His Back Pay and Front Pay Damages

In a Title VII retaliation case as well as a Rehabilitation Act case brought by a federal employee whose damages are co-extensive and governed by 42 U.S.C. § 1981 a(b), the plaintiff has a statutory duty to mitigate his damages "by being reasonably diligent in seeking employment substantially equivalent to the position he lost." Walters v. City of Atlanta, 803 F.2d 1135, 1145 (11th Cir. 1986) (citations omitted); Miller v. Marsh, 766 F.2d 490, 492 (11th Cir. 1985) (affirming summary judgment against the plaintiff on her claim for back pay based on its finding that she voluntarily removed herself from the labor market when she enrolled full-time as a law student).  Section 2000e-5(g)(1) of Title 42 of the United States Code prescribes the government employee's duty to mitigate and provides in pertinent part:

Interim earnings or amounts earnable with reasonable diligence by the

person ... discriminated against shall operate to reduce the back pay
otherwise allowable.

42 U.S.C. § 2000e-5(g)(1).  Ford Motor Co. V. Equal Opportunity Comm'n, 458 U.S.

219, 231 (1982) (employee must use reasonable diligence in finding other suitable

employment); Walters v. City of Atlanta, 803 F.2d 1135, 1145 (11th Cir. 1986);  Nord v.

United States Steel Corp., 758 F. 2d 1462, 1470-72 (11th Cir. 1985) (explaining duty to

mitigate); Richardson v. Tricom Pictures & Prod., Inc., 334 F. Supp. 2d 1303, 1310-13

(S.D. Fla. 2004) (J. Altonaga), aff'd., 2006 WL 1559756 (11th Cir., June 8, 2006).  The

defendant has the burden of showing that the plaintiff failed to mitigate.  Richardson,

334 F. Supp. 2d at 1310.

> 'Substantially equivalent employment' is employment that affords virtually
> identical promotional opportunities, compensation, job responsibilities,
> working conditions, and status to those available to employees holding
> the position from which the Title VII claimant has been discriminatorily
> terminated.

Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1527 (11th Cir. 1991) (citing Sellers v.

Delgado Community College, 839 F.2d 1132, 1138 (5th Cir. 1988)).  Although a plaintiff

is not required to be successful in mitigating his damages, he must make a reasonable,

good faith effort to mitigate.  Walters, 803 F.2d at 1145 (citation omitted).  Generally,

the burden regarding mitigation requires the defendant to prove that substantially

equivalent work was available and that the employee did not use reasonable diligence

to obtain it.  Weaver, 922 F.2d at 1527 (citing Sellers, 839 F.2d at 1139).  The Eleventh

Circuit has recognized that where, as here, the "employer proves that the employee

has not made reasonable efforts to obtain work, the employer does not also have to

9

establish the availability of substantially comparable employment." Id.; see also West v. Nabors Drilling USA, Inc., 330 F.3d 379, 393 (5th Cir. 2003) (quoting Sellers, 839 F.2d at 1138-39 (5th Cir. 1988)).

**III.   Back Pay**

The jury found that the defendant retaliated against the plaintiff and failed to accommodate the plaintiff's requests for accommodation due to his disability.  (Jury Verdict, DE# 186, 11/15/06). The Supreme Court and the Eleventh Circuit hold that a successful Title VII claimant is presumptively entitled to back pay.  Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975); EEOC v. Massey Yardley Chrysler Plymouth, 117 F.3d 1244, 1251 (11th Cir. 1997); Nord v. United States Steel Corp., 758 F.2d 1462,1470 (11th Cir. 1985).  "It is the duty of the district court, after a finding of discrimination, to place the injured party in the position he or she would have been absent the discriminatory actions."  Nord, 758 F.2d at 1470 (citing 118 Cong. Rec. 7168 (1972; Albemarle Paper Co., 422 U.S. 405).  "'Back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." Id. (quoting Albemarle Paper Co., 422 U.S. at 421).   Uncertainties in back pay are resolved in favor of the discrimination victim.  See Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 260-261 (5th Cir. 1974), cert. denied, 439 U.S. 1115 (1979).

Despite the presumptive entitlement to back pay, the plaintiff's statutory duty to mitigate remains.  The plaintiff concedes and the evidence and trial testimony confirm

10

that the plaintiff did nothing to seek alternative substantially equivalent employment from the date of his termination on February 26, 2005, through the date of the trial, November 1, 2006.  The plaintiff asserts that he was constructively discharged in October 2002, when he was transferred from Ft. Lauderdale to Miami, resulting in his leave without pay status.  The plaintiff argues that he is entitled to back pay because he made reasonably diligent efforts to find substantially equivalent employment after he was placed on leave without pay status.  The defendant argues that the plaintiff is not entitled to any back pay damages because he failed to mitigate after his date of termination, February 26, 2006, and that he is not entitled to any damages for the time period before his termination because he was not constructively discharged.

The plaintiff's reliance on constructive discharge case law is misplaced. In the Eleventh Circuit, the law regarding constructive discharge is well established.  "To show constructive discharge, the employee must prove that his working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."   Wardwell v. School Bd. of Palm Beach County, 786 F.2d 1554, 1556 (11th Cir. 1986) (citations omitted) (reversing as clearly erroneous the district court's finding of sex-based constructive discharge where female plaintiff was passed over for promotion in favor of less experienced male and was assigned extra duties); see also Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003); Hill v. Winn-Dixie Stores, 934 F.2d 1518, 1527 (11th Cir. 1991) (affirming district court's grant of judgment notwithstanding the verdict because evidence of reprimands, criticism, and supervisor's withdrawal of support was insufficient to prove constructive

discharge where employer attempted to remedy the situation after the plaintiff's resignation).  "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment."  <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1231 (11th Cir. 2001) (citation omitted) (reversing jury verdicts in favor of plaintiffs because the plaintiffs did not prove that they were subjected to age-based hostile environments or constructively discharged because of their ages).

In evaluating a claim of constructive discharge, the Eleventh Circuit uses an objective standard that does not consider the plaintiff's subjective feelings.  <u>Id.</u> (citation omitted).  The defendant's decision to relocate the plaintiff to the Cyber Crimes Group in Miami on October 21, 2002, did not constitute a constructive discharge.   The plaintiff never resigned from the defendant.  <u>See</u> <u>Thomas v. Dillard Dept. Stores, Inc.</u>, 116 F.3d 1432, 1437 (11th Cir. 1997) (reversing summary judgment because fact issue existed regarding actual termination)  The parties did not submit the issue of constructive discharge to the jury and the jury did not make any finding regarding the issue.   The Court finds that there was no constructive discharge.

As explained more fully below, however, because the defendant's retaliation and refusal to accommodate caused the plaintiff to be on leave without pay and absent without leave between October 21, 2002 and February 26, 2005, the court finds that the plaintiff is entitled to his full salary for the duration of his leave without pay and absent without leave and should be awarded back pay from February 26, 2006 through the date of the judgment.

In the present action, the defendant refused the plaintiff's request for an

12

accommodation to work somewhere other than in Miami.  The defendant placed the plaintiff on leave without pay due to the plaintiff's disability from October 21, 2002, through March 8, 2004.  From March, 2004 through the date of his termination, the defendant placed the plaintiff on absence without leave ("AWOL") status.  Throughout the period from October 21, 2002, through February 26, 2005, the defendant did not compensate the plaintiff and the plaintiff exhausted certain fringe benefits.   The jury found the defendant liable for failing to accommodate the plaintiff under the Rehabilitation Act and retaliating against the plaintiff for exercising his legal rights in violation of Title VII.

In a factually analogous case involving a hearing-impaired Central Intelligence Agent, the district court in Virginia found that the plaintiff was entitled to back pay from the date she pursued medical disability retirement ("MDR") because the government failed to accommodate her disability.  See Szedlock v. Tenet, 139 F. Supp. 2d 725, 733 (E.D. Va. 2001).  The Szedlock court explained:

> Simply put, when the defendant failed over an extended period of time, to accommodate plaintiff's disability -- when in the summer and fall of 1997 the CIA Office of Medical Services determined that plaintiff was unable to perform the essential functions of Position 6 with or without a reasonable accommodation (a finding the jury rejected) and when defendant thereafter concluded that there were no positions in the CIA, at plaintiff's experience level, in which she could perform with or without a reasonable accommodation -- she was left with no option but to pursue and accept the MDR .  It follows then that her lost wages are a direct result of the defendant's unlawful conduct.  Thus, it was defendant's failure to provide plaintiff with the reasonable accommodations sought -- to which the jury found she was legally entitled -- that compelled plaintiff to seek and accept the MDR.  In a real sense, plaintiff's claim for lost wages is the result of discrimination, and she is thus entitled to some equitable relief in the form of back pay or front pay to place her in the position she would

have enjoyed absent discrimination. See Albemarle, 422 U.S. at 421.

Id. In a footnote, the Szedlock court further explained that reinstatement was an inappropriate remedy under the circumstances because the CIA maintained it had no suitable positions and the plaintiff was reluctant to accept reinstatement without a guarantee of accommodation.  Id. at n.15 (acknowledging that reinstatement is the preferred remedy, but not when it would prolong rather than end the dispute) (citing Duke v. Uniroyal, Inc., 928 F.2d 1413, 1423 (4th Cir. 1991)).  In Szedlock, the court determined that plaintiff's

> post-retirement efforts ... do not reflect reasonable diligence, and therefore suggest that plaintiff has not sustained her duty to mitigate damages.
> It follows that plaintiff's award of back pay must be limited to the time in which it would be reasonable to expect that plaintiff could find a suitable position.  See, e.g., Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 8, 16 (1st Cir. 1999) (upholding an 18-month back pay award where former employee failed to mitigate damages as a reasonable time to locate employment).

Id. at 734-35.  The Szedlock court rejected plaintiff's contention that she was unemployable.  Id.  Given the plaintiff's pronounced hearing loss, the Szedlock court determined that it was "reasonable to believe that had plaintiff diligently sought alternative employment, she would have found employment within twenty-four months of her departure from the CIA."  Id. at 35.  The Szedlock court limited her back pay award to a period of twenty-four months.

Similarly, in the present case, the plaintiff was on leave due to his disability.  The evidence establishes and the plaintiff concedes that he made no effort to obtain employment after he was terminated on February 26, 2006.  Consequently, the Court

finds that the plaintiff was not reasonably diligent in seeking substantially equivalent employment.  However, because the plaintiff was on leave status due to his disability and the defendant's failure to provide a reasonable accommodation, the plaintiff is entitled to full pay for the period between October 21, 2002 through the date of termination, February 26, 2005, and back pay reduced by the amount of $47,030 for the period between February 26, 2006, and entry of the judgment in this action.

Although the Court rejects the plaintiff's contention that he was constructively discharged on October 18, 2002, the Court believes it is the operative date for calculating damages under the circumstances.  The Court is persuaded by the reasoning and analysis of the district court in Szedlock.  But for the defendant's unlawful conduct in its failure to provide a reasonable accommodation as found by the jury, the plaintiff would have received his full salary and benefits for the period of time he was on leave (i.e. October 21, 2002 through February 26, 2005).

The only evidence of damages came from the testimony of the plaintiff and his expert, Mr. Argiz.  The defendant relied on the cross-examination testimony of the plaintiff and Mr. Argiz, but did not submit any other evidence to refute the plaintiff's damages calculations.  Mr. Argiz used October 18, 2002, as the operative date for calculating the plaintiff's back pay damages.  Mr. Argiz testified that the plaintiff earned $61,795 as of August 25, 2002. (DE# 224, 12/11/06; Trial Tr. of Argiz p. 23, ln.3-12) Mr. Argiz estimated the value of fringe benefits as twenty-three percent (23%) of the plaintiff's earnings based on the U.S. Bureau of Labor Statistics table. (Id. at p. 30-31, ln. 10-35 and 1-12; p. 72, ln. 1-24; p. 74, ln. 18-25; p. 77, ln. 12-25).   Mr. Argiz

deducted $47,030 as the average median earnings that the plaintiff theoretically could have earned had he obtained employment as of March 8, 2004.  Mr. Argiz testified that the plaintiff's damages for back pay for the period from October 18, 2002, through October 31,2006, is $219,064.  The advisory jury verdict recommended an award of $220,000 for back pay.  The Court finds that the plaintiff is entitled to a back pay award of $264,314,[1] which includes damages for his full pay for the period of time in which the plaintiff was on leave and had no duty to mitigate before he was terminated.[2]

## IV.    Front Pay

The Supreme Court and the Eleventh Circuit hold that "Title VII claimants are presumptively entitled to reinstatement [or alternatively, front pay] under the 'make whole' policy."  Nord v. United States Steel Corp., 758 F.2d 1462, 1473 (11th Cir. 1985) (citations omitted);  Weaver v. Casa Galardo, Inc., 922 F.2d 1515, 1529 (11th Cir. 1991) (superseded by statute on other grounds).

"[F]ront pay is simply money awarded for lost compensation during the period

---

[1]Back pay is assessed for the period from October 21, 2002 through October 31, 2006.  Trial commenced on November 1, 2006.

[2] The Court has increased the amount of back pay by $45,250 because the Court finds that the plaintiff did not have any duty to mitigate before his date of termination, February 26, 2005.  Mr. Argiz unnecessarily reduced his estimate of the plaintiff's back pay damages for a period of approximately one year before the plaintiff was terminated.  Mr. Argiz, the plaintiff's expert, opined that if the plaintiff mitigated his back pay damages by reentering the work force on March 8, 2004, he would have earned approximately $47,030 annually or $181 per work day (52 weeks = 260 workdays per year).  The additional $45,250 reflects the inclusion of $181 per work day for the period between March 8, 2004 through February 26, 2005 (250 workdays).  The $264,314 award for back pay is the sum of $219,064 back pay damages testified to by Mr. Argiz and the $45,250 additional damages awarded because the plaintiff was not required to mitigate until February 26, 2005.

between judgment and reinstatement or in lieu of reinstatement." <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843, 846 (2001).   "In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement." <u>Pollard</u> 532 U.S. at 846 (citations omitted).  Although reinstatement is the preferred remedy, the Eleventh Circuit has acknowledged that "[f]ront pay may be particularly appropriate in lieu of reinstatement where discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy." <u>See</u>  <u>Goldstein v. Manhattan Industries</u>, 758 F.2d 1435, 1449 (11th Cir. 1985); <u>see also</u> <u>United Paper Workers Intel Union, AFL-CIO, Local 274 v. Champion</u>, 81 F.3d 798, 805 (8th Cir. 1996) (finding an equitable award of front pay is generally appropriate when reinstatement must be denied).  During a pretrial conference and at trial, the parties have indicated that reinstatement is not a viable remedy under the circumstances of this case. The Court must determine whether front pay is necessary to make the plaintiff whole.

In <u>Weaver</u>, the Eleventh Circuit vacated an award of front pay where the three-year award of back pay was only modestly reduced for plaintiff's failure to mitigate. The <u>Weaver</u> court explained that

> A monetary award of front pay is calculated to terminate on the date a victim of a discrimination attains an opportunity to move to his 'rightful place.'  Front pay, therefore, is appropriate only when the other damages

17

awarded will not fully compensate the plaintiff for his injury.

Weaver, 922 F.2d at 1529 (citation omitted) (footnotes omitted).  The duty to mitigate

continues for a claim for front pay.  Richardson v. Tricom Pictures & Productions, Inc.,

334 F. Supp. 2d 1303, 1318 (S.D. Fla. 2004), aff'd, 183 Fed. Appx. 87 (11th Cir. 2006)

(unpublished) (citation omitted).  In Richardson, the district court determined that the

plaintiff was not entitled to front pay

> not only because of [the plaintiff's] failure to mitigate her damages, but
> also because [the plaintiff] failed to "produce 'competent evidence
> suggesting that [her] injuries have narrowed the range of economic
> opportunities available to [her]'" or that '"her injury has caused a
> diminution in [her] ability to earn a living.'"

Id. at 1319 (quoting McKnight v. General Motors Corp., 973 F.2d 1366, 1370 (7th Cir.

1992) (affirming denial of front pay and reinstatement)).  Because the plaintiff failed to

mitigate after he was terminated, his claim for front pay should be limited to what he

could have earned had he sought substantially equivalent employment.

The plaintiff's economic expert, Mr. Argiz, testified that the plaintiff's future loss

for the approximately fourteen year period between October 31, 2006 and November

29, 2020 is $760,514. (DE# 224, 12/11/06; Trial Tr. of Argiz p. 42, ln. 1-25; p. 43, ln.

11-12; p. 57, ln. 18-22)

"An award of front pay until retirement ignores the plaintiff's duty to mitigate

damages and the district court's corresponding obligation to estimate the financial

impact of future mitigation."  Champion, 81 F.3d at 805 (citing Dominic v. Consolidated

Edison Co., 822 F.2d 1249, 1258 (2d Cir. 1987)); see McKnight, 973 F.2d at 1366

(denying front pay and reinstatement stating that plaintiff "appears to be attempting to

18

force [defendant] to insure his future employment success") (quoting Gorniak v. National R.R. Passenger Corp., 889 F.2d 481 (3rd Cir. 1989)).  In Champion, the Eighth Circuit reversed a front pay award because the plaintiff cited no authority for an award of twenty-four years and a number of cases rejected far shorter awards as improperly speculative.  Id. (citing Hebert v. Hearst Corp., 900 F.2d 1050, 1056-56 (7th Cir. 1990) (five years was too speculative); Goes v. Exxon Office SYS. Co., 747 F.2d 885, 890 (3d Cir. 1984) (affirming four months of front pay because a longer period would be speculative); Snow v. Pillsbury Co., 650 F. Supp. 299, 300 (D. Minn. 1986) (nine-year front pay award reduced to three years)).

The Court is awarding back pay in the amount of $264,314 to compensate the plaintiff for the period from October 21, 2002, through October 31, 2006, the day before his trial in this action.[3]  The plaintiff has made no effort to secure alternative employment since he was discharged approximately two years ago.  At trial, the plaintiff testified that he is ready, willing and able to seek employment.  His treating psychiatrist believed that the plaintiff could return to work in early 2004.   The plaintiff appears physically able to work.  The plaintiff presently seeks injunctive relief to have his personnel record with the defendant cleansed for the purpose of seeking employment. The jury's advisory award of front pay in the amount of $780,000[4] for fourteen years

---

[3]The computation of back pay for the time period immediately before the trial is the same as the computation for front pay after the trial.  The Court will use the October 31, 2006, date used by the plaintiff's expert to assign damages for back and front pay.

[4]Mr. Argiz calculated front pay in the amount of $760,514 for the fourteen year period between October 31, 2006, through November 29, 2020.

(i.e. through November 29, 2020, the anticipated date of plaintiff's retirement) is unreasonable under the circumstances.

The Court concludes that eighteen months from October 31, 2006 (i.e. through April 30, 2008), is a reasonable period in which the plaintiff could obtain alternative employment if he is diligent in the future. On or before February 26, 2007, the parties shall confer and attempt to agree to a sum for the eighteen months of front pay.  The sum shall include the plaintiff's projected salary and a twenty-three percent (23%) increase for fringe benefits and a reduction of $47,030 per year for the plaintiff's failure to mitigate.  Should the parties be unable to agree to a sum, the parties shall each submit their own proposed sum supported by an affidavit.  After the front pay amount is determined, the Court will enter a final judgment in the plaintiff's favor to include an amount for front pay, $264,314 for back pay, and $300,000 for compensatory damages.

DONE AND ORDERED, in Chambers, at Miami, Florida, this __12th__ day of February, 2007.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record