UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60985-CIV-O'SULLIVAN
[CONSENT CASE]

ULYSSES J. HUDSON,

    Plaintiff,

v.

MICHAEL CHERTOFF, as
Secretary of the United States
Department of Homeland Security,

    Defendant.
_____/

## ORDER

THIS MATTER comes before the Court on the Defendant's Motion for Judgment as a Matter of Law and to Set Aside the Jury Verdict under Fed. R. Civ. P. 50, or, in the Alternative Motion for a New Trial under Fed. R. Civ. P. 59, and Incorporated Memorandum of Law (DE# 209, 11/21/06). Having presided at trial and having reviewed the applicable filings and law and having heard argument from counsel, for the reasons stated more fully below, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Judgment as a Matter of Law and to Set Aside the Jury Verdict under Fed. R. Civ. P. 50, or, in the Alternative Motion for a New Trial under Fed. R. Civ. P. 59, and Incorporated Memorandum of Law (DE# 209, 11/21/06) is DENIED.

## INTRODUCTION

A jury returned a verdict in favor of the plaintiff's claims against the government

for discrimination under the Rehabilitation Act of 1973, 29 U.S.C. 701, et seq., and for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et seq.  The jury determined that the plaintiff should be awarded back pay damages in the amount of $220,000, front pay damages in the amount of $780,000, and compensatory damages in the amount of $1.5 million for emotional pain and mental anguish.

## FACTUAL BACKGROUND

The plaintiff was employed by the United States Customs Service and the Department of Homeland Security, Immigration and Customs Enforcement as an Intelligence Research Specialist from 1995 through February 26, 2005.  In October, 2001, the government transferred the plaintiff from their Miami office to the Office of Resident-In-Charge ("RAC") in Ft. Lauderdale.  The transfer arose from a prior accommodation request, which was litigated in Hudson v. Ridge, Case No. 01-2425-Civ-Marra ("Hudson I").

On or about October 21, 2002, the defendant reassigned the plaintiff from Ft. Lauderdale to the Cyber Crimes Group in Miami while the defendant investigated the plaintiff's August 2002 allegations of stalking and harassment against his supervisor.  From the date of his reassignment to Miami, October 21, 2002, to the date of his termination, February 26, 2005, the plaintiff never reported to work in Miami.  On February 26, 2005, the defendant terminated the plaintiff for his purported failure to maintain a regular work schedule and for unauthorized absence from the workplace.

At trial, the plaintiff testified as to the emotional pain and mental anguish that he experienced as a result of the alleged violations of Title VII and the Rehabilitation Act.

Additionally, he presented medical testimony through Dr. Lanes and Dr. George Wallace-Barnhill to further support his claims for compensatory damages. The plaintiff testified that as a result of his supervisor's remarks about getting nails in his tires that he was unable to return to work for five days due to a relapse in his depression. (Hudson Trial Tr. 160: 3-5). He also testified to the anxiety and distress he experienced when his supervisor informed him that his leave in June 2002 was considered absence without leave. (Hudson Trial Tr. 170: 13-171:6). The plaintiff testified that his supervisor's close surveillance of him made him sick. (Hudson Trial Tr. 164:12-18; 175:15-176:6; 181:3-7). Upon being advised of his transfer back to Miami Cyber Crimes in October 2002, the plaintiff testified that he felt destroyed and nauseous. He testified that he experienced intense anxiety and uncontrollable crying. (Hudson Trial Tr. 187:18-188:5; 188:20-189:16). He experienced an even deeper depression when he learned of his potential termination in June 2003. (Hudson Trial Tr. 212:23-213:10). His ultimate termination in February 2005 destroyed him. His requests for accommodation had gone through all of the official channels and had been denied.   (Hudson Trial Tr. 240:14-241:17).

    Drs. Lanes and Wallace-Barnhill corroborated the plaintiff's testimony of his emotional state during the relevant time period of his claims. The plaintiff was unable to enjoy life's everyday pleasures and was socially isolated. His relationships with his wife and daughter were strained. The plaintiff had difficulty sleeping despite receiving heavy medications. (Lanes Trial Tr. 42:7-17; 25:10-19).

    The plaintiff testified that he suffered financial harm in addition to the emotional

harm. He filed Chapter 13 bankruptcy as a result of his inability to work. To get out of bankruptcy, he had to sell his second home, which he considered as his daughter's college fund. His home was in foreclosure twice. His teeth deteriorated because he could not afford to pay a dentist. (Hudson Trial Tr. 244:22-248:6)

After the jury returned a verdict in the plaintiff's favor, the defendant filed the present motion. The defendant argues that it is entitled to judgment as a matter of law because there was no legally sufficient evidentiary basis for this case to have been submitted to a jury, and subsequently, for a reasonable jury to find in the plaintiff's favor on his Rehabilitation Act or retaliation claims. Alternatively, the defendant asserts that it is entitled to a new trial because the Court erred in denying its motion in limine to exclude Hudson I matters from trial. The defendant maintains that the Hudson I matters were injected improperly into the Hudson II trial and provide a possible explanation for the unreasonable conclusions of the Hudson II jury. The defendant also seeks new trial on the ground that the compensatory damages awarded by the jury were excessive. The plaintiff asserts that he produced sufficient evidence at the trial for a reasonable jury to find in his favor on both of his claims and that the defendant's motion for judgment as a matter of law and alternative motion for new trial lack merit.

## ANALYSIS

### I.  The Defendant Is Not Entitled to Judgment as a Matter of Law.

Rule 50(b) of the Federal Rules of Civil Procedure governs a motion for judgment as a matter of law. The Court "must view all of the evidence adduced at trial and draw all reasonable inferences in the light most favorable to the nonmoving party."

4

George v. GTE Directories Corp., 195 F.R.D. 696, 698 (M.D. Fla. 2000 (citing Montgomery v. Noga, 168 F.3d 1282, 1289 (11th Cir. 1999)).  "The trial judge may not re-weigh the evidence, make credibility determinations or substitute its judgment for that of the jury."  Id.  "'[T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.... If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.'"  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986) (citations omitted)).

### A.   Retaliation Act

The defendant argues that there was insufficient evidence to establish a prima facie case of retaliation or violation of the Rehabilitation Act.  To prove retaliation under Title VII, the plaintiff is required to show that: "1) he engaged in protected activity; 2) the defendant employer was aware of that activity; 3) he suffered an adverse employment action; and 4) there was a causal link between the protected activity and that adverse employment action."  Id. (citing Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999).  But see, Parris v. Miami Herald Publishing Co., 216 F.3d 1298, 1301 (11th Cir. 2000)(three elements for retaliation claim excluding number two).  When these elements are met a presumption of retaliation exists and the burden of proof shifts to the defendant employer "to show that it had a legitimate non-retaliatory reason for its adverse employment decision."  Id. (citing Meeks v. Computer Assoc. Intern., 15 F.3d 1013, 1019 (11th Cir. 1994)(other citations omitted).  The presumption of discrimination "'drops out of the picture'" when the defendant submits sufficient

evidence of a non-retaliatory reason for its action.  Id. (quoting Reeves, 530 U.S. at 143 (citations omitted).  To establish that he was a victim of retaliation, the plaintiff must then prove "'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for' retaliation." Id. at 699 (quoting Reeves, 530 U.S. at 143 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Pretext may be established by inference.  The trier of fact may "'infer the ultimate fact of intentional discrimination' from the falsity of the employer's explanation .... Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 699 (quoting Reeves, 530 U.S. at 147).  "[T]he threshold issue is whether the [p]laintiff presented sufficient evidence for a reasonable jury to find a causal connection between his protected conduct and his termination, and that the [d]efendant's stated reason for firing him was pretext for retaliation." Id.  In the Eleventh Circuit, the causal link requirement is broadly construed.  The plaintiff must simply show "that the protected activity and the negative employment action are not completely unrelated." Id. (quoting Meeks, 15 F.3d at 1021 (citations omitted)).

In a Joint Pretrial Stipulation, the parties agreed that the plaintiff had a disability within the meaning of the Rehabilitation Act and that he engaged in statutorily protected activity within the meaning of Title VII of the Civil Rights Act.  (DE# 138, 10/12/06).  Sufficient evidence was adduced at trial for a reasonable jury to conclude that the defendant's adverse employment actions (i.e. transferring the plaintiff from Ft.

6

Lauderdale back to Miami and terminating him) were related to his statutorily protected activities of filing his EEO complaints and filing his internal complaints against his supervisor, Kimberly Duff.  Mary Jan Mallory testified that she waited to determine how to handle the plaintiff's September 11, 2002, complaint regarding the alleged stalking by his supervisor, Kimberly Duff, because the defendant was involved in mediation of <u>Hudson I</u> in October 2002.  Jesus Torres testified that but for the filing of the complaint against Ms. Duff, the plaintiff would not have been transferred back to Miami.  Additionally, the plaintiff testified that Richard Kolbusz, one of his supervisors, specifically told him that if he "were to withdraw [his] complaints, EEO complaint, and this memo complaint against Ms. Duff, then [Mr. Kolbusz would be in a position to let [the plaintiff] remain working in Ft. Lauderdale." (Hudson Trial Tr., Vol. II, 186:20-25; 187:1-6)(DE# 216, Ex. J) Viewing the evidence in the light most favorable to the plaintiff, there was sufficient evidence to submit the retaliation claim to a jury and for a reasonable jury to find in the plaintiff's favor.

### B.   Rehabilitation Act

To establish a Rehabilitation Act claim, the plaintiff was required to show that 1) he had a disability; 2) he is qualified for the position; and 3) he was subjected to unlawful discrimination as a result of his disability when Defendant unreasonably refused a reasonable accommodation to him.  <u>See</u>, <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005).  The defendant does not dispute the first two elements.  Rather, the defendant asserts that the plaintiff's treating psychiatrist, Dr. Lanes, did not communicate to the defendant that the plaintiff was "medically prohibited" from working

in Miami and consequently, there was no evidence adduced at trial which could have led a reasonable juror to conclude that the plaintiff was denied a reasonable accommodation.

At trial in the present case, the plaintiff introduced evidence that his transfer to Miami occurred after he complained about his supervisor stalking him and shortly after the mediation in Hudson I was unsuccessful. The plaintiff also introduced evidence that he was on the qualified list for the vacancy for the Intelligence Research Specialist in Ft. Lauderdale, which was later withdrawn when the defendant laterally reassigned Robin Hunter from Atlanta based on hardship. See Joint Ex. 3 (Authorization to Process Personnel Request re: Intel Research Specialist Duty Location Ft. Lauderdale, 5/27/03)  Dewayne Wicks, one of the defendant's employees in it Labor and Employee Relations group, testified that the law required the defendant to fill a vacancy with someone being disabled. (Wicks' Trial Tr. 76:23-25; 77:1-11) (DE# 216, Ex. E; 12/6/06)

The plaintiff testified and offered the medical testimony of Dr. Lanes and Dr. Barnhill regarding his inability to work in the Miami office. At trial, Dr. Lanes reviewed eight of the letters that he sent to the defendant, which addressed the need for the plaintiff to work somewhere other than Miami. Mr. Wicks testified that he did not speak with the plaintiff's doctors and that he directed the plaintiff's supervisor, George Anaipakos, not to speak with the plaintiff's doctors. See Joint Ex. 11 (an e-mail from Mr. Wicks to Mr. Anaipakos and Richard Kolbusz dated March 5, 2004, that addresses the plaintiff's refusal to return to work in Miami on March 8, 2004) (DE# 216-2, 12/6/06,

Ex. F) Mr. Wicks admitted that rather than responding to the correspondence from the plaintiff and his treating doctors that the defendant would opt to charge and "continue to charge Mr. Hudson with AWOL." (Wicks' Trial Tr. 88: 8-10; 89: 12-14, 23-25; Jt. Ex. 11) (DE# 216, 12/6/06, Ex. E & F).  The defendant's witnesses consistently testified that they did not retaliate or discriminate against the plaintiff when he was terminated more than two years after he refused to report to work in Miami.

Reviewing the evidence in the light most favorable to the plaintiff, he produced sufficient circumstantial evidence to establish that the refusal to grant the plaintiff's requested accommodation was related to his disability and to establish the requisite causal connection for a jury to reject as pre-textual the defendant's proffered reason for terminating the plaintiff.  A reasonable jury could find, as it did, that the defendant's refusal to accommodate was related to the plaintiff's disability and that the reason the defendant terminated the plaintiff was pre-textual.

The defendant's renewed motion for judgment as a matter of law pursuant to Rule 50(b) is DENIED.

## II. A New Trial Is Not Warranted.

The defendant alternatively seeks a new trial.  Rule 59 governs a motion for new trial and provides a less stringent standard than for judgment as a matter of law under Rule 50(b).  A new trial may be granted "for any reason recognized at common law, even where there is substantial evidence supporting the verdict."  George, 195 F.R.D. at 701.  "However, a judgment should not be set aside 'merely because the losing party can probably present a better case on another trial.'"  Id. (quoting Ball v. Interoceanica

9

Corp., 71 F.3d 73, 76 (2d Cir. 1995), cert. denied, 519 U.S. 863 (1996)). "Rather, the trial judge must determine if 'in his opinion, the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice." Id. (quoting Insurance Company of N. America v. Valente, 933 F.2d 921, 923 (11th Cir. 1991)).  "[T]o assure that the judge does not simply substitute his judgment for that of the jury, ... we have noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984) (quoting Conway v. Chemical Leaman Tank Lines, Inc., 610 F.2d 360, 363 (5th Cir. 1980)(citation omitted)).

The defendant seeks a new trial on the following grounds: 1) for the reasons set forth in its two motions for judgment as a matter of law made at the close of the plaintiff's case and at the close of evidence at trial; 2) because this Court erred in denying in part the defendant's motion in limine to exclude Hudson I matters from trial; 3) for the reasons set forth in the defendant's motion for remittitur; and 4) because the Court is capable of evaluating the credibility of the defendant's witnesses who gave testimony stating that they had not discriminated against the plaintiff.  (DE# 209, 11/21/06)

At trial, this Court denied the defendant's motion for judgment as a matter of law at the close of the plaintiff's case and at the close of the evidence at trial.  The Court's pretrial Omnibus Order addressed the defendant's motion in limine to exclude reference to Hudson I.  In the Omnibus Order, the Court narrowed the permissible evidence to the "timing of the mediation in Hudson I," the plaintiff's "reassignment to

Miami from Ft. Lauderdale," and "the conversation between [Mr. Hudson] and his supervisor, Ms. Duff, in June 2002, wherein the topic of nails in Mr. Hudson's tires was discussed." (DE# 163)   At trial, the Court gave a limiting instruction to the jury in regard to their consideration of any Hudson I evidence.  The defendant has failed to indicate what evidence was wrongfully admitted during trial and has not demonstrated that the wrongfully admitted evidence regarding Hudson I was timely objected to during trial. See Saunders v. Chatham County Bd. of Commissioners, 728 F.2d 1367, 1368 (11th Cir. 1984) (challenges to rulings regarding admissibility of inadmissible or prejudicial evidence must be brought to the attention of the trial judge during trial).  The defendant itself raised Hudson I issues in its opening and closing arguments as well as during the cross-examination of the plaintiff.  The references and evidence regarding Hudson I complied with the scope of the pretrial Omnibus Order as well as the scope of the Court's limiting instruction provided to the jury during trial.

     The Court has found sufficient evidence to support the jury's award of back pay and front pay damages as well as compensatory damages award for emotional pain and mental anguish particularly in light of the mandatory reduction from $1.5 million to the statutory cap of $300,000.  A new trial is not warranted.  The credibility of witnesses is for the jury, not the Court, to weigh.  In the present action, the jury found in favor of the plaintiff.  The jury's verdict is not against the "clear weight of the evidence" and "will not result in a miscarriage of justice." George, 195 F.R.D. at 701.  Because this Court finds no grounds to warrant a new trial, the motion for new trial is DENIED.

DONE AND ORDERED, in Chambers, at Miami, Florida, this __12th__ day of February, 2007.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record