UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60985-CIV-Graham/O'Sullivan

ULYSSES J. HUDSON,

        Plaintiff,

v.

MICHAEL CHERTOFF,
as Secretary of the United States
Department of Homeland Security,

        Defendant.

_____/

## PLAINTIFF'S VERIFIED MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND INCORPORATED MEMORANDUM OF LAW

    Plaintiff, Ulysses J. Hudson ("Mr. Hudson"), through counsel, hereby petitions the Court, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 2000-5(k), Fed. R. Civ. P. 54(d) and S.D. Fla. L.R. 7.3(A), for an award of attorneys' fees of $482,842.44, related out-of-pocket costs of $20,684.36, and taxable costs in the amount of $15,588.68, for a total of $519,115.48. This request reflects fees and costs incurred through April 30, 2007, and Mr. Hudson reserves the right to supplement this Petition to seek additional fees and costs incurred during the remainder of the litigation, including those incurred litigating Mr. Hudson's entitlement to attorneys' fees and costs. In support of this petition, Mr. Hudson files the following memorandum of law and detailed supporting declarations and factual materials.

## I.    INTRODUCTION

    Mr. Hudson seeks to recover attorneys' fees and costs arising out of this litigation pursuant to the Court's April 2, 2007 Final Judgment [D.E. 260] awarding Mr. Hudson $713,343.54 in damages (plus interest) against Defendant Michael Chertoff ("Defendant"). Mr. Hudson successfully sued Defendant for discrimination under the Rehabilitation Act of 1973, 29

U.S.C. § 701 et seq., and for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.  He therefore is entitled to attorneys' fees pursuant to 29 U.S.C. § 794a and 42 U.S.C. § 2000-5(k), and taxable costs pursuant to 28 U.S.C. § 1920.

The attorneys' fees and costs sought by Mr. Hudson are reasonable and arose from legal work that led to a remarkable result in the case.  As will be demonstrated in more detail below, the hourly rates of Mr. Hudson's attorneys — including attorneys from Hogan & Hartson LLP ("Hogan & Hartson"), who represented Mr. Hudson at trial, and attorneys Donna Ballman ("Ms. Ballman") and Mark Berkowitz ("Mr. Berkowitz"), who represented Mr. Hudson in pre-trial administrative proceedings that Mr. Hudson was required by law to pursue before filing this case (the "EEOC Proceedings") — are consistent with or below the rates for similar services by attorneys of similar skill, experience and reputation.  Moreover, the number of hours worked by Mr. Hudson's attorneys is reasonable.

Mr. Hudson's counsel at Hogan & Hartson undertook representation of Mr. Hudson through the Southern District of Florida's Volunteer Lawyers Project (the "VLP") on the eve of the District Court's original June 12, 2006, trial calendar.  The amount of work needed to prepare in a short period of time was significant.  Within a five-month period, Hogan & Hartson defeated Defendant's summary judgment motion; reviewed thousands of documents; filed a handful of pretrial motions and defended against numerous other pretrial motions; conducted expert discovery; and prepared for and presented Mr. Hudson's case at a five-day jury trial held before this Court commencing on November 1, 2006.  Notably, there were 27 witnesses on the parties' trial witness list, and 17 witnesses testified at trial.  There also were 207 exhibits on the parties' trial exhibit lists.  The jury awarded Mr. Hudson $2.5 million on all of his claims.  In the six months subsequent to trial, Hogan & Hartson then responded and argued in defense of numerous post-trial motions filed by Defendant.

Mr. Hudson now seeks $2,036.95 in out-of-pocket expenses and $6,565.46 in taxable costs that he personally incurred when he was litigating the case *pro se* prior to Hogan &

CASE NO. 05-60985-CIV-Graham/O'Sullivan

Hartson's appearance on his behalf. Mr. Hudson also seeks $10,000 in attorneys' fees he paid in late 2004 and early 2005 to Ms. Ballman, and $1,000 in attorneys' fees he paid to Mr. Berkowitz in October 2002. Mr. Hudson also seeks $471,842.44 in attorneys fees, $18,647.41 in out-of-pocket expenses and $9,023.22 in taxable costs incurred by Hogan & Hartson during its representation of Mr. Hudson. As the matter was referred to Hogan & Hartson through the VLP, 25% ($117,960.61) of Hogan & Hartson's fees will be given to the VLP as required by the agreement between those two parties, which is attached as **Exhibit 1**. The remainder of Hogan & Hartson's fees, expenses and costs will go to the firm's Community Services Department ("CSD Department"), which funds other pro bono efforts like this one.[1]

At all times during its representation of Mr. Hudson, Hogan & Hartson and its attorneys made a conscious effort to minimize the amount of attorneys' fees, expenses and costs in this case. Assignments, projects and motions were divided between the three mid- to senior-level associates who tried the case, Maria Eugenia Ramirez ("Ms. Ramirez"), Brian Lerner ("Mr. Lerner") and Jason Kellogg ("Mr. Kellogg"). Hogan & Hartson partner Mark Cheskin ("Mr. Cheskin"), who also tried the case, supervised their efforts. With the exception of a comprehensive strategy meeting held on October 13, 2006 and a handful of other crucial strategy meetings, trial preparation meetings and court hearings, Hogan & Hartson's attorneys did not submit multiple billing entries for single events.

Likewise, with the exception of instances in which Mr. Cheskin supervised or reviewed the work of Ms. Ramirez, Mr. Lerner and Mr. Kellogg, Mr. Hudson is not seeking fees relating to one attorney's review of another attorney's work or similar duplication of efforts. Moreover, although 15 Hogan & Hartson timekeepers billed time to this case, Mr. Hudson seeks only those fees associated with the four attorneys who tried the case and the paralegal who assisted them at

---

[1] Hogan & Hartson devoted approximately 90,000 hours in 2005 to pro bono matters throughout the country. In 2006, Hogan & Hartson's Florida-based lawyers devoted more than 4,300 pro bono hours and received the Chief Justice's Law Firm Commendation from the Supreme Court of Florida in January 2007.

3

trial, Erick Rodriguez ("Mr. Rodriguez"). Hogan & Hartson has written off a total of $64,013.49 in fees relating to work by non-trial counsel, multiple billing entries for single events and where one attorney reviewed another's work. In addition, Mr. Rodriguez's fees have been reduced so as not to reflect 15.5 hours ($2,042.13) in work he undertook to organize the file prior to this Court's September 20, 2006 status conference.

Finally, Mr. Hudson does not seek fees at the full, standard rates of Hogan & Hartson's attorneys. Rather, Mr. Hudson seeks only the discounted fee (by 15%) that Hogan & Hartson charges its not-for-profit clients (a total of $94,562.81). Including write-offs for multiple time entries, time for non-trial counsel and the 15% fee reduction, Mr. Hudson, through counsel, has significantly written-off and discounted the fees sought by more than 25% ($158,576.31).

The billing records and other documentation supporting this Motion are attached to the Declaration of Brian L. Lerner (the "Lerner Declaration"), which is attached hereto as **Exhibit 2**, the Declaration of Donna Ballman (the "Ballman Declaration"), which is attached hereto as **Exhibit 3**, and the Declaration of Mark Berkowitz (the "Berkowitz Declaration"), which is attached hereto as **Exhibit 4.** The reasonableness of the attorneys' fees and costs sought by Mr. Hudson is supported by the Declaration of Neil Chonin (the "Chonin Declaration") which is attached hereto as **Exhibit 5**. The costs incurred by Mr. Hudson while proceeding *pro se* are supported by the Hudson Declaration attached as **Exhibit 6**. Mr. Hudson's agreement with Hogan & Hartson regarding that firm's representation of him is attached as **Exhibit 7**.

## II.     LEGAL SERVICES PERFORMED

The professional services rendered by Mr. Hudson's counsel fall into the following general categories: analysis of the case and defense of Defendant's summary judgment motion; pretrial motion practice; expert witness discovery; trial preparation; trial; and post-trial motions. Mr. Hudson's attorneys' fee claim includes attorneys' fees and costs arising out of his pre-suit EEOC Proceedings. A thorough description of these categories follows.

CASE NO. 05-60985-CIV-Graham/O'Sullivan

### A.  Inception of the Case and Appearance of Hogan & Hartson

On June 20, 2005, Mr. Hudson filed this lawsuit against Defendant alleging, among other things, that his former employer discriminated and retaliated against him in violation of Title VII and the Rehabilitation Act.  [D.E. 1].  Prior to and after filing his Complaint, Mr. Hudson contacted about 14 attorneys regarding his case.  (Hudson Decl. ¶ 10).  He also met with two other law firms referred to him by the VLP.  (*Id.*).  For a variety of reasons, no one took his case.  (*Id.*).  They told him, among other things, that the case was too difficult or complex; that the case was not profitable; that a conflict of interest existed; that time constraints prevented them from representing him; that they would have preferred to have the case from its inception; and that they did not want to litigate against the federal government.  (*Id.*).

On September 14, 2005, Mr. Hudson filed an Amended Complaint adding five new counts.  [D.E. 19].  Both Mr. Hudson's Complaint and Amended Complaint were filed *pro se*.  While proceeding *pro se*, Mr. Hudson incurred the costs of filing and defending numerous motions.  He also incurred costs associated with conducting a handful of depositions, including the deposition of Gary Lang ("Mr. Lang"), Chief of Staff for the United States Immigration and Customs Enforcement agency, in Washington D.C.  The parties attended an unsuccessful mediation on April 25, 2006.

The case was set on the District Court's two-week trial calendar commencing June 12, 2006.  [D.E. 30].  On June 2, 2006, Defendant filed its Third Corrected Motion for Summary Judgment (the "Summary Judgment Motion").  [D.E. 92].

In early June 2006, Hogan & Hartson, through the VLP, appeared on Mr. Hudson's behalf.  The District Court removed the case from its June 12, 2006, calendar.  On July 20, 2006, a second unsuccessful mediation was held.

### B.  Response to Summary Judgment Motion

When Hogan & Hartson appeared at the calendar call in early 2006, the Court ordered Mr. Hudson to submit a response in opposition to the Summary Judgment Motion.  Mr.

CASE NO. 05-60985-CIV-Graham/O'Sullivan

Hudson's attorneys worked diligently to familiarize themselves with the case and file a response within a relatively short timeframe. [D.E. 108]. This included poring over thousands of documents, reading numerous deposition and trial transcripts from Mr. Hudson's first trial, analyzing the Amended Complaint's 10 counts[2] and researching and drafting a Response that ultimately defeated the Summary Judgment Motion. [D.E. 125]. Mr. Lerner was primarily responsible for Mr. Hudson's Response to the Summary Judgment Motion.

### C.   **Pretrial Motions**

Mr. Hudson's attorneys spent considerable time filing key pretrial motions as well as responding to pretrial motions filed by Defendant. Days prior to being contacted by Hogan & Hartson, Mr. Hudson filed a Notice waiving his right to a jury trial. [D.E. 83]. On July 14, 2006, Mr. Hudson's counsel filed a Motion to Withdraw Mr. Hudson's Waiver. [D.E. 102]. This motion was handled primarily by Mr. Kellogg. The District Court granted the motion and referred the case to this Court for a specially set trial. [D.E. 126].

On October 3, 2006, Mr. Hudson filed his Motion in Limine to Exclude Evidence. [D.E. 132]. Because the motion in limine raised two discrete issues, Mr. Kellogg researched, drafted and argued one of the issues and Ms. Ramirez researched, drafted and argued the other.

Mr. Hudson's attorneys also responded to four motions in limine filed by Defendant seeking (i) to exclude evidence relating to matters concerning a previous lawsuit filed by Mr. Hudson (the "*Hudson I* Lawsuit") [D.E. 133]; (ii) to exclude testimony of one of Mr. Hudson's expert witnesses, Dr. George Wallace-Barnhill ("Dr. Wallace-Barnhill") [D.E. 134]; (iii) to limit testimony of another expert witness, Dr. Douglas Lanes ("Dr. Lanes") [D.E. 136]; and (iv) to exclude the testimony of witnesses Frank Figueroa and William Roppolo [D.E. 139].

Ms. Ramirez was principally responsible for researching and drafting Mr. Hudson's response to Defendant's motion in limine regarding the *Hudson I* lawsuit, as she already was

---

[2]   After counsel reviewed the claims in his Amended Complaint, Mr. Hudson voluntarily dismissed his claims for violation of the First and Fourteenth Amendments in a good-faith effort to streamline the issues for trial. [D.E. 101].

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

handling a similar issue for a motion in limine that Mr. Hudson filed on this particular issue. [D.E. 145]. Ms. Ramirez also researched and drafted Mr. Hudson's response to the Dr. Wallace-Barnhill motion in limine. [D.E. 144]. Mr. Kellogg researched and drafted Mr. Hudson's response to the Dr. Lanes motion in limine. [D.E. 146]. And Mr. Lerner researched and drafted Mr. Hudson's response to the Figueroa/Roppolo motion in limine. [D.E. 147].

Mr. Hudson's counsel also responded to a motion filed by Defendant to bifurcate the trial and exclude any reference at trial to back pay and front pay damages. [D.E. 135]. Mr. Kellogg researched, drafted and argued Mr. Hudson's response. [D.E. 143].

Other necessary pretrial papers filed by Mr. Hudson's counsel included Proposed Jury Instructions (handled by Mr. Lerner) [D.E. 150] and Proposed Voir Dire Questions (handled by Mr. Kellogg) [D.E. 151], as well as a Joint Pretrial Stipulation filed jointly with Defendant (handled by Mr. Lerner) [D.E. 138].

### D.    Expert Witness Discovery

Following a status conference held September 20, 2006, Mr. Hudson had 12 days, through October 2, 2006, to retain an expert witness on damages and issue an expert report. [D.E. 130]. Mr. Hudson retained Antonio Argiz ("Mr. Argiz") of Morrison, Brown, Argiz and Farra, who quickly analyzed a significant amount of financial information and timely issued a report. Mr. Hudson's counsel coordinated the production of documents in response to Defendant's Subpoena Duces Tecum of Mr. Argiz, and defended Mr. Argiz's deposition on October 17, 2006. Mr. Hudson's counsel also issued a Subpoena Duces Tecum on Defendant's rebuttal expert, Michael Piette ("Mr. Piette"), and deposed Mr. Piette on October 23, 2006. Expert discovery issues were handled principally by Mr. Kellogg.

### E.    Trial

Although the preparation and presentation of Mr. Hudson's claims at trial generally was a collaborative effort, trial witness responsibilities were divided among trial counsel. Each attorney was given exclusive responsibility for examining a portion of the 17 witnesses that

CASE NO. 05-60985-CIV-Graham/O'Sullivan

appeared at trial (and the many that were on Defendant's witness list who ultimately did not testify). Mr. Lerner, Ms. Ramirez and Mr. Kellogg ultimately handled five trial witnesses each, and Mr. Cheskin handled two trial witnesses. Mr. Hudson's counsel also divided responsibility for voir dire (Mr. Kellogg), opening statement (Ms. Ramirez) and closing argument (Mr. Lerner). Although Mr. Hudson's counsel had a handful of collaborative sessions on trial strategy and presentation, the majority of all trial preparation and execution was performed individually in a manner that prevented the accumulation of duplicative attorneys' fee entries.

### F.     Post-trial Motions

Shortly after trial, Mr. Hudson tendered a settlement offer to Defendant seeking to settle the amount of Mr. Hudson's damages, attorneys' fees and costs and avoid post-trial litigation. Defendant did not respond.

Mr. Hudson's counsel spent a significant amount of time responding to post-trial motions filed by Defendant. On November 21, 2006, Defendant filed three post-trial motions: (i) a Motion for Judgment as a Matter of Law and to Set Aside the Jury Verdict or Motion for a New Trial (the "JML/New Trial Motion") [D.E. 209]; (ii) a Motion to Set Aside the Verdict or Receive a New Trial on Compensatory Damages not to Exceed $300,000 (the "Remittitur Motion") [D.E. 210]; and (iii) a Motion for Summary Judgment and/or Final Judgment on Plaintiff's Front Pay and Back Pay Awards (the "Front Pay/Back Pay Motion") [D.E. 211]. Responsibility for researching, drafting and arguing Mr. Hudson's responses to Defendant's motions was divided among Mr. Lerner (Remittitur Motion) [D.E. 217]; Ms. Ramirez (the JML/New Trial Motion) [D.E. 216]; and Mr. Kellogg (the Front Pay/Back Pay Motion) [D.E. 218]. The parties argued these motions at a hearing before this Court on December 12, 2006.

On January 11, 2007, Mr. Hudson filed a Motion for Judgment to Include Injunctive Relief, which was handled by Mr. Lerner. [D.E. 231]. Mr. Hudson also filed a Reply in support of that motion. [D.E. 241]. During post-trial briefings, an issue also arose regarding Mr. Hudson's entitlement to pre- and post-judgment interest. Defendant initially maintained that Mr.

Hudson had no entitlement to any pre- and post-judgment interest as the U.S. Government was immune. Both sides filed position papers, with Defendant eventually withdrawing a number of its arguments, and the Court entering a ruling on the remaining disputed issues. [D.E. 249, 251].

### G.   **Prior Administrative Proceedings**

Prior to filing this lawsuit, Mr. Hudson filed three administrative complaints with the Equal Employment Opportunity Commission that relate to this lawsuit. (Hudson Decl. ¶ 4). The first, Case No. 02-2394, alleged harassment by Mr. Hudson's boss, Kimberly Duff, and challenged his transfer back to Miami. (*Id.*; Berkowitz Decl. ¶ 4). These ultimately became crucial allegations in this lawsuit. Mr. Hudson paid Mr. Berkowitz a $1,000 retainer for legal services related to Case No. 02-2394. (Hudson Decl. ¶ 4; Berkowitz Decl. ¶ 6)

In 2003, Mr. Hudson filed EEOC Proceeding 03-2487T, which involved Mr. Hudson's allegations that Defendant improperly passed over Mr. Hudson for Intelligence Research Specialist openings in Ft. Lauderdale, and that Defendant wrongly penalized Mr. Hudson for alleged misuse of his government credit card. (Hudson Decl. ¶ 5). The former issue was integral to Mr. Hudson's claims in this case, and the latter was presented as a defense by Defendant at trial. In September 2004, Mr. Hudson hired Ms. Ballman to represent him in Proceeding 03-2487T, paying her a $10,000 retainer. (*Id.*; Ballman Decl. ¶ 6). From September 13, 2004 through March 9, 2005, when the retainer was exhausted, Ms. Ballman conducted seven depositions, (Ballman Decl. ¶ 7), each of which was helpful to Hogan & Hartson in preparing for trial. (Lerner Decl. ¶ 15). Some were used to examine or cross-examine trial witnesses, including Dr. Lanes, Jesus Torres and Robbin Hunter. (*Id.*).

In mid-2005, soon after Mr. Hudson was terminated by Defendant, he filed EEOC Proceeding ICE-05-E228K, alleging that the termination was discriminatory and retaliatory. (Hudson Decl. ¶ 6). These allegations became an important part of this lawsuit in September 2005, as part of Mr. Hudson's Amended Complaint. [D.E. 19].

CASE NO. 05-60985-CIV-Graham/O'Sullivan

### III.     <u>MEMORANDUM OF LAW</u>

**A.**     <u>Mr. Hudson Is Entitled to His Reasonable Attorneys' Fees and Costs</u>

Mr. Hudson prevailed on his Rehabilitation Act claims and his retaliation claims under Title VII. He is therefore entitled to his attorneys' fees and expert witness fees under 42 U.S.C. § 2000e-5(k) (Title VII attorneys' fees and expert fees); 29 U.S.C. § 794a (Rehabilitation Act attorneys' fees); and 28 U.S.C. § 1920 (costs). In the Title VII context, "[a] prevailing plaintiff 'ordinarily is to be awarded attorneys' fees in all but special circumstances.'" *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 63 (1980) (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412) (1978)). Moreover, an attorneys' fees award "should include reasonable out-of-pocket expenditures of the attorney beyond normal overhead." *Allen v. Freeman*, 122 F.R.D. 589, 590 (S.D. Fla. 1988) (citing *Dowdell v. City of Apopka*, 698 F.2d 1181, 1191-92 (11th Cir. 1982)).

Mr. Hudson seeks to recover $471,842.44 in attorneys' fees and paralegal fees, $18,647.41 in out-of-pocket expenses and $9,023.22 in taxable costs incurred by Hogan & Hartson from June 6, 2006 through April 30, 2007. Mr. Hudson also seeks to recover $2,035.95 in out-of-pocket expenses and $6,565.46 in taxable costs he incurred prior to Hogan & Hartson's appearance in this case and during the EEOC Proceedings, $10,000 in attorneys' fees he spent to hire Ms. Ballman in EEOC Proceeding 03-2487T from September 13, 2004 through March 9, 2005, and $1,000 to hire Mr. Berkowitz in EEOC Proceeding 02-2394 in 2002. *See Mammano v. Pittston Co.*, 792 F.2d 1242, 1245 (4th Cir. 1986) ("Fees for services performed at the administrative level are clearly available if the plaintiff eventually prevails.") (citing *N.Y. Gaslight, Inc.*, 447 U.S. at 61-63).

In arriving at these figures, Mr. Hudson and his counsel employed the "lodestar" method of determining the amount of a reasonable attorneys' fee award. The lodestar method produces an objective estimate of the value of the attorneys' services by multiplying the attorneys' reasonable hourly rate by the number of hours the attorneys worked on the matter. *See Norman*

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

CASE NO. 05-60985-CIV-Graham/O'Sullivan

*v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).[3]

### 1.    The Hourly Rates Charged by Mr. Hudson's Counsel Are Reasonable

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Id.* When determining the reasonable hourly rate, the courts may consider both direct evidence of charges by lawyers under similar circumstances or opinion evidence of a party qualified to render such an opinion. *Id.* The Court can serve as its own expert and may make decisions based on its own knowledge and experience in this area. *Id.* at 1303. In addition, the Court may consider the amount in controversy and the results obtained when evaluating a reasonable rate. *Schafler v. Fairway Park Condo. Ass'n*, 324 F. Supp. 2d 1302, 1313 (S.D. Fla. 2004).

As set forth in the Lerner Declaration attached as **Exhibit 2** and the Ballman Declaration attached as **Exhibit 3**, Mr. Hudson's attorneys kept records of their time on an hourly basis. The hourly rates set for Hogan & Hartson's attorneys are shown in the chart attached as the last page of Exhibit E to the Lerner Declaration. Ms. Ballman charged $275 per hour. (Ballman Decl. ¶ 5). Mr. Berkowitz did not retain a copy of his fee records in EEOC Proceeding 02-2394, but was paid $1,000 for approximately seven hours of work. (Berkowitz Decl. ¶ 6; Hudson Decl. ¶¶ 4-5). Given the skills required in this case, the hourly rates charged by Mr. Hudson's attorneys in this matter are reasonable. (Chonin Decl. ¶ 8).

The rates also are reasonable considering the experience of the attorneys involved. (*Id.*). Mr. Cheskin, the supervising attorney on this matter, has successfully litigated as lead counsel

---

[3]    The lodestar method presumptively includes the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Norman*, 836 F.2d at 1299. Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. These factors, to the extent that they are relevant, are considered within the ensuing lodestar discussion. *Id.*

CASE NO. 05-60985-CIV-Graham/O'Sullivan

numerous complex employment and commercial litigation matters during his nearly 20-year career. (Lerner Decl. ¶ 6). Ms. Ramirez is a ninth-year attorney and is of counsel with Hogan and Hartson. (*Id.*). Ms. Ramirez has practiced in the area of labor and employment law, as well as general commercial litigation and international arbitration. (*Id.*). Mr. Lerner is an eighth-year associate who also has practiced extensively in the area of labor and employment law. (*Id.* ¶ 3). Mr. Kellogg is a fifth-year associate with Hogan & Hartson whose practice focuses on commercial litigation. (*Id.* at ¶ 6). Ms. Ballman is President of Donna Ballman P.A. in Ft. Lauderdale and has practiced for more than 20 years, focusing on employment law. (Ballman Decl. ¶ 3). She has been named one of the "Top South Florida Lawyers" by South Florida Legal Guide based upon a survey of practicing local attorneys. (*Id.*). And Mr. Berkowitz is principal shareholder of Mark J. Berkowitz P.A. in Ft. Lauderdale, and also has practiced for more than 20 years focusing on employment law. (Berkowitz Decl. ¶ 3).

### 2.    The Hours Worked By Mr. Hudson's Counsel Were Reasonable

Under *Norman*, once the Court makes a determination of the reasonable hourly rate, the "next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. In light of the extensive litigation involved in this matter, the hours expended by counsel for Mr. Hudson in prosecution of this case were reasonable and proper.

As a preliminary matter, Mr. Hudson does *not* seek to recover for a significant amount of time spent on this matter by various Hogan & Hartson timekeepers, all of which would be reasonable given the voluminous records in this case (as demonstrated by the large exhibit binders used at trial). (Chonin Decl. ¶ 5; Lerner Decl. ¶ 11). Mr. Hudson seeks only the fees of his trial counsel and one paralegal. (Chonin Decl. ¶ 5; Lerner Decl. ¶ 11). Mr. Hudson does not seek fees for certain timekeepers when those individual timekeepers did a minimal amount of work on this matter or whose primary role was to research discrete issues. (Chonin Decl. ¶ 5; Lerner Decl. ¶ 11). With relatively few exceptions, Mr. Hudson does not seek fees for one counsel's review of another counsel's work. (Chonin Decl. ¶ 5; Lerner Decl. ¶ 11). Where

12

CASE NO. 05-60985-CIV-Graham/O'Sullivan

multiple timekeepers attended a single meeting or event, such as the July 20, 2006 mediation before Magistrate Judge Palermo, Mr. Hudson seeks the fees of only one timekeeper at each meeting. (Chonin Decl. ¶ 5; Lerner Decl. ¶ 11). Moreover, Hogan & Hartson has applied the discounted rate (by 15%) that it charges not-for-profit entities. (Chonin Decl. ¶ 5; Lerner Decl. ¶ 12). In total, Mr. Hudson has voluntarily reduced the fees sought by $158,576.31, representing 25% of the total fees incurred in this matter. (Chonin Decl. ¶ 5; Lerner Decl. ¶ 12). In taking this highly conservative approach to the amount of fees it seeks to recover, Mr. Hudson hopes to avoid wasteful and unnecessary discovery and litigation over the issue of fees. (Chonin Decl. ¶ 5; Lerner Decl. ¶ 13).

Attached to the Lerner Declaration at page 3 of Exhibit E is a chart summarizing the Hogan & Hartson fees that Mr. Hudson does seek to recover. The chart includes the hours expended by Mr. Hudson's attorneys. Detailed time records summarizing the work performed by each person are attached to the Lerner Declaration as Exhibit F. The attorneys and paralegal working on this matter maintained contemporaneous billing records of the work they performed and the hours worked. (Lerner Decl. ¶ 14). The attorneys have very carefully broken out their time entries by individual task. (*Id.* ¶ 14). Attached to the Ballman Declaration is an invoice of the $10,615 in attorneys' fees relating to EEOC Proceeding 03-2487T. (Ballman Decl. Ex. C). Ms. Ballman also maintained contemporaneous records. (*Id.* ¶ 8).

The amount of work is entirely reasonable given the nature of this matter. (*See* Chonin Decl. ¶ 8). In EEOC Proceeding 03-2487T, Ms. Ballman spent 38.6 hours conducting written discovery and preparing for and taking seven depositions, among other things. (Ballman Decl. ¶¶ 7-8 and Ex. C). Although Mr. Berkowitz did not retain his fee records, he recalls spending a number of hours over the course of two days with Mr. Hudson regarding strategy and helping with an affidavit in EEOC Proceeding 02-2394. (Berkowitz Decl. ¶ 6). Hogan & Hartson, through the VLP, took this case on the eve of the District Court's original June 12, 2006, trial calendar. (Lerner Decl. ¶ 8; Chonin Decl. ¶ 6). After receiving a continuance but being ordered

CASE NO. 05-60985-CIV-Graham/O'Sullivan

to respond to a pending summary judgment motion filed by Defendant, Mr. Hudson's counsel quickly pored over and digested thousands of pages of documents and familiarized themselves with this case, which involved 10 separate claims and a large cast of potential witnesses. (Lerner Decl. ¶ 8; Chonin Decl. ¶ 6).   On September 14, 2006, Mr. Hudson defeated Defendants' Summary Judgment, and counsel promptly turned their attention toward trial, which was set for October 31, 2006. (Lerner Decl. ¶ 8; Chonin Decl. ¶ 6).  Mr. Hudson's counsel proffered and responded to a host of significant pretrial motions, retained an expert and conducted expert discovery. (Lerner Decl. ¶ 8; Chonin Decl. ¶ 6).  Mr. Hudson's counsel then presented Mr. Hudson's case at a five-day trial before this court from November 1-7, 2006 and obtained a $2.5 million jury verdict. (Lerner Decl. ¶ 8; Chonin Decl. ¶ 6).  Mr. Hudson's counsel also obtained important injunctive relief that, among other things, prevents Defendant from providing negative employment information to Mr. Hudson's prospective employers.  (Lerner Decl. ¶ 8; Chonin Decl. ¶ 6).

Following trial, Mr. Hudson's counsel researched, drafted and argued in opposition to a host of post-trial motions filed by Defendant. (Lerner Decl. ¶ 9; Chonin Decl. ¶ 7).  Although the compensatory damages award was reduced by $1.2 million due to the statutory cap, in post-trial litigation Mr. Hudson's counsel was able to retain Mr. Hudson's back pay award and a portion of Mr. Hudson's front pay award. (Lerner Decl. ¶ 9; Chonin Decl. ¶ 7).  As the U.S. Supreme Court has held, the most critical factor in determining a reasonable fee award is "the degree of success obtained" — and "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983).

At all times during the case the parties and respective counsel maintained a high level of civility and professionalism. (Lerner Decl. ¶ 16).  However, the case was extremely contentious, and there were relatively few agreements or stipulations entered into between the parties (although Mr. Hudson generally agreed to stipulations proposed by Defendant, Defendant for the

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

CASE NO. 05-60985-CIV-Graham/O'Sullivan

most part rejected most stipulations proposed by Mr. Hudson). (*Id.*). Two mediations and one post-trial settlement offer failed.

Mr. Chonin reviewed the billing detail for the attorneys' fees and costs (through April 30, 2007) sought by Mr. Hudson. (Chonin Decl. ¶ 4). Based on his 45 years of experience in employment law, Mr. Chonin opined that the amount of time spent by Mr. Hudson's attorneys was reasonable, and that the sum of $482,842.44 was a reasonable fee for the attorneys' services and related costs in this matter.[4] (*Id.* ¶ 8).

### 3.    Mr. Hudson Is Entitled to Fees Incurred by Its Paralegal

Mr. Hudson seeks to be reimbursed for work done by Hogan & Hartson's paralegal in this case, Erick Rodriguez ("Mr. Rodriguez"). Paralegal fees may be tallied as attorneys' fees if they are customarily billed separately to clients rather than being treated as part of overhead. *Missouri v. Jenkins*, 491 U.S. 274, 285-87 (1989). The only constraint is that if the paralegal's work is purely "clerical," then it should not be billed at paralegal rates but at some lower rate. *Id.* at 288. The Supreme Court held that courts should "encourage the use of lower cost paralegals rather than attorneys wherever possible" to foster "cost-effective delivery of legal services." *Id.* As is customary, Mr. Hudson's attorneys billed Mr. Rodriguez's time separately to clients rather than treating it as overhead. (Lerner Decl. ¶ 17). Mr. Hudson has removed $2,042.13 in work conducted by Mr. Rodriguez prior to the September 20, 2006 status conference before this Court, leaving $32,674 in paralegal fees to be recovered as attorneys' fees under *Jenkins*. (*Id.*).

### 4.    Mr. Hudson Is Entitled to Other Reasonable Expenses and Costs Attributable as Attorneys' Fees

As described below, Mr. Hudson seeks to recover the taxable costs he incurred pursuant to 28 U.S.C. § 1920. To the extent, however, that certain reasonable billable costs and out-of-

---

[4]    Mr. Hudson also reserves the right to supplement his request in the future to seek attorneys' fees and costs incurred after April 30, 2007, including but not limited to additional attorneys' fees, expert witness fees and costs incurred to prosecute this Verified Motion.

CASE NO. 05-60985-CIV-Graham/O'Sullivan

pocket expenses are not taxable by statute, they are recoverable as attorneys' fees. *See Allen v. Freeman*, 122 F.R.D. 589, 591 (S.D. Fla. 1988) (King, C.J.) (holding that attorneys' fees awards absorb most of the expenses that are not included in statutory costs or billable hours, and that these "costs normally include[ ] postage, long distance calls, photocopying, travel, paralegals and expert witnesses"); *see also, e.g., Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C. Cir. 1984). Reasonable out-of-pocket expenses incurred by Mr. Hudson and his counsel in this litigation include the following:

- $7,301.73 for all photocopies not covered as "costs" under Section 1920 (see Part III.B below). *See Allen*, 122 F.R.D. at 591. (Lerner Decl. ¶ 18(a));

- All travel expenses, provided the Court does not deem them taxable "costs" under Section 1920 (see Part III.B below). *See Allen*, 122 F.R.D. at 591-92; *see also Moore v. Univ. of Notre Dame*, 22 F. Supp. 2d 896, 911-12 (N.D. Ind. 1998) These include: $514.98 in travel expenses personally incurred by Mr. Hudson for travel to Washington D.C. to depose Defendant's witness Gary Lang while Mr. Hudson was proceeding *pro se* (Hudson Decl. ¶ 7(a)); $41.60 in parking fees he personally incurred to travel to the courthouse to file documents and attend hearings, mediation and trial and to meet with his attorneys (*Id.* ¶ 7(b)); and $287.62 in parking fees incurred by Hogan & Hartson attorneys traveling to the courthouse for hearings, mediation and trial. (Lerner Decl. ¶ 18(b));

- $946.49 in out-of pocket costs incurred by Mr. Hudson personally for supplies necessary for printing, filing and serving documents while he was proceeding *pro se* in the EEOC Proceeding and in this case. (Hudson Decl. ¶ 7(c));

- $526.44 for couriers and express mail services. *See Pinkham*, 84 F.3d at 294-95 (holding that messenger and express mail charges are reasonable out-of-pocket expenses to be included as attorneys' fees award). (Lerner Decl. ¶. 18(c));

- $10,571.52 for Westlaw and $84.80 for PACER electronic research charges. *Allen*, 122 F.R.D. at 592 ("Computerized legal research is . . . generally included as an out of pocket expenses in an attorneys' fees award."). (Lerner Decl. ¶ 18(d));

- $111 for telecopy and facsimile charges. *See Pinkham*, 84 F.3d at 294-95 (holding that fax charges are reasonable out-of-pocket expenses to be included as attorneys' fees award). (Lerner Decl. ¶ 18(e));

- $855.38 for postage charges. *Allen*, 122 F.R.D. at 591-92 (holding that postage and FedEx costs are out-of-pocket expenditures recoverable in an attorneys'

16

CASE NO. 05-60985-CIV-Graham/O'Sullivan

fees award) (Lerner Decl. ¶ 18(f)). This includes $26.92 in postage charges incurred by Hogan & Hartson (Lerner Decl. ¶ 18(f)), and $828.46 in postage charges personally incurred by Mr. Hudson while he was proceeding *pro se* in the EEOC Proceeding and in this case. (Hudson Decl. ¶ 7(d));

- $25 in other customary billable charges for word processing services. (Lerner Decl. ¶ 18(g)); and

- $262 personally incurred by Mr. Hudson for the services of David Sullivan, the mediator used during the first mediation on April 24, 2006 (Hudson Decl. ¶ 7(e)).

All of these charges were reasonably expended by Mr. Hudson and his counsel during the prosecution of Mr. Hudson's claims against Defendant, and therefore should be recoverable.

### 5.   Mr. Hudson Is Entitled to Expert Fees

42 U.S.C. § 2000e-5 entitles Mr. Hudson to recover expert witness fees as part of his attorneys' fees. Mr. Hudson seeks a total of $53,700 in expert witness fees. (Lerner Decl. ¶ 19). Mr. Hudson retained three expert witnesses in this case, Dr. Lanes, Dr. Wallace-Barnhill and Mr. Argiz. (*Id.*). All three testified at trial. (*Id.*). Mr. Hudson seeks reimbursement for $1,800 in fees relating to Dr. Lanes. (*Id.*). Although Dr. Lanes billed Mr. Hudson and Hogan & Hartson for a one-hour pretrial conference and seven hours of trial time (totaling $3,600), Mr. Hudson seeks reimbursement for only three of the trial-related hours (for travel and testimony time). (*Id.*). Mr. Hudson incurred $1,000 in fees relating to Dr. Wallace-Barnhill for two hours of pre-trial consultation and two hours of trial time. (*Id.*). And Mr. Hudson incurred $64,169.75 in fees relating to damages expert Mr. Argiz, $14,169.75 (or 22%) of which was written off by Mr. Argiz upon Hogan & Hartson's request. (*Id.*). Mr. Hudson seeks reimbursement only for the remaining $50,000 in expert fees billed by Mr. Argiz. (*Id.*). Mr. Hudson also incurred $900 to Defendant's damages expert, Mr. Piette, for his October 24, 2006 deposition. (*Id.*).

### B.   Mr. Hudson Is Entitled to His Reasonably Necessary Costs

Mr. Hudson also seeks to recover, pursuant to 28 U.S.C. § 1920, the taxable costs that he and his counsel incurred prosecuting this case. Per Local Rule 7.3(C), Mr. Hudson has filed

17

CASE NO. 05-60985-CIV-Graham/O'Sullivan

contemporaneously a bill of costs on form AO133 of the Administrative Office of the United States Courts.

*Filing Fee.* Pursuant to 28 U.S.C. § 1920(1), Mr. Hudson seeks reimbursement for the original $250 filing fee in this case. (*See* Hudson Decl. ¶ 7(f)); *see also* Bill of Costs Ex. 1). This fee was personally incurred by Mr. Hudson while he was proceeding *pro se*.

*Court Reporter Fees.* Mr. Hudson also seeks reimbursement for $8,605.54 in court reporters' fees, including reimbursement for trial transcripts. (*See* Bill of Costs Ex. 2). This amount includes $5,641.10 in court reporters' fees personally incurred by Mr. Hudson in the EEOC Proceeding and while he was proceeding *pro se* in this case, (Hudson Decl. ¶ 7(g)), and $2,964.44 incurred by Hogan & Hartson. (Lerner Decl. ¶ 20(a)).

*Witness Fee.* Mr. Hudson seeks $320 in witness fees ($40 per witness) for the witnesses appearing on Mr. Hudson's behalf at trial: Mr. Hudson (5 days), Mr. Argiz, Dr. Lanes and Dr. Wallace-Barnhill. *See* 28 U.S.C. § 1920(3) and 28 U.S.C. § 1821(b); *see also* Bill of Costs at 2. Mr. Hudson also seeks reimbursement for mileage he personally incurred to and from the courthouse (19.5 miles each way) at the statutory rate of $0.445 per mile, for a total of $86.78. *See* 28 U.S.C. § 1821(c)(2). (Hudson Decl. ¶ 7(h)).

*Photocopies.* Mr. Hudson also is entitled to all photocopies "attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the Court's consideration." *Fla. Keys Citizens Coalition, Inc. v. U.S. Army Corps of Eng'rs*, 386 F. Supp. 2d 1266, 1270 (S.D. Fla. 2005) (Huck, J.). Mr. Hudson does not seek reimbursement for the costs of those photocopies that he cannot attribute with reasonable certainty, or that were made "only for the convenience of counsel." *Id.* Rather, Mr. Hudson seeks $5,451.80 in photocopies that were necessarily obtained for use in this case as service copies of pleadings, part of discovery, document production or the creation of exhibit binders for use by the Court and jury at trial. (Lerner Decl. ¶ 20(b); *see also* Bill of Costs Ex. 3). Of these photocopies, $31 were incurred by Mr. Hudson personally to obtain a copy of his

HOGAN & HARTSON L.L.P., IIII BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

government file while he proceeded *pro se*. (Hudson Decl. ¶ 7(i)).

*Long-Distance Telephone Charges.* Mr. Hudson seeks to recoup $30.44 for reasonable long-distance telephone charges, most of which are related to the telephone deposition of Mr. Piette on October 24, 2006. *See Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) ("Long distance telephone charges . . . are appropriate expenses under § 1920 to the extent they are reasonable."); *see also* Lerner Decl. ¶ 20(c); Bill of Costs Ex. 4.

*Travel Expenses.* Mr. Hudson also seeks to recoup $844.20 in travel expenses, including $514.98 he personally incurred to travel to Washington D.C. to take the deposition of Defendant's witness Mr. Lang. *See Cullens*, 29 F.3d at 1494 ("[T]ravel expenses are appropriate expenses under § 1920 to the extent they are reasonable.").[5] (Hudson Decl. ¶ 7(a); *see also* Bill of Costs Ex. 5). He also seeks $41.60 in parking fees he personally incurred personally to travel to the courthouse to file documents and attend hearings, mediation and trial. (Hudson Decl. ¶ 7(b)). Mr. Hudson seeks $287.62 for parking fees incurred by Hogan & Hartson's attorneys when traveling to the courthouse for hearings, mediation and trial. (Lerner Decl. ¶ 20(d)).

## CONCLUSION

For all the foregoing reasons, Mr. Hudson respectfully requests that his Verified Motion for Award of Attorneys' Fees, Expenses and Costs be granted and that Mr. Hudson be awarded attorneys' fees of $482,842.44, out-of-pocket expenses of $20,684.36 and taxable costs in the

---

[5] Although a recent Eleventh Circuit panel declined to award travel expenses under Section 1920, that panel apparently was unaware of the Court of Appeals' binding decision in *Cullens* that travel expenses are recoverable under Section 1920. *See Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1346 (11th Cir. 2006) (holding that 1984 district court case cited by Disney did not support an award of travel expenses under Section 1920). Since a decision by an Eleventh Circuit panel (such as the 1994 *Cullens* decision) can only be overturned by the Court of Appeals sitting en banc, the *Cullens* decision is still good law. "[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court." *U.S. v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993). Even ignoring *Cullens* and assuming travel expenses could not be taxed as costs under Section 1920, Mr. Hudson may still recoup these as out-of-pocket expenses through his attorneys' fees petition (see Part III.A.4 above).

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

CASE NO. 05-60985-CIV-Graham/O'Sullivan

amount of $15,588.68, for a total of $519,115.48.  This request includes $10,000 in fees personally incurred by Mr. Hudson to pay Ms. Ballman in the EEOC Proceedings, $1,000 in fees to pay Mr. Berkowitz and $2,036.95 in out-of-pocket costs and $6,565.46 in taxable costs personally incurred by Mr. Hudson prior to the retention of Hogan & Hartson as pro bono counsel.  It also includes $471,842.44 in fees, $18,647.41 in out-of-pocket expenses and $9,023.22 taxable costs incurred by Hogan & Hartson from June 6, 2006 through April 30, 2007. Mr. Hudson also respectfully requests that to the extent additional attorneys' fees, expenses and costs are incurred  litigating the pending motions, including this Verified Motion, or other issues that may arise, Mr. Hudson be allowed to amend this Verified Motion to request those additional fees and costs.  Mr. Hudson does not believe that hearing is necessary on issues raised by this verified petition and does not request one.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(A)

I HEREBY CERTIFY that I conferred with counsel for Defendant in an effort to resolve the issues presented in Plaintiff's Verified Motion to Award Attorneys' Fees, Expenses and Costs, but that the parties were unable to reach an agreement.

Respectfully submitted,

s/ Jason Kellogg
Maria Eugenia Ramirez (Fla. Bar No. 349320)
meramirez@hhlaw.com
Brian L. Lerner (Fla. Bar No. 0177202)
bllerner@hhlaw.com
Jason Kellogg (Fla. Bar No. 578401)
jkellogg@hhlaw.com
Mark R. Cheskin (Fla. Bar No. 708402)
mrcheskin@hhlaw.com
HOGAN & HARTSON L.L.P.
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone:     (305) 459-6500
Facsimile:     (305) 459-6550

Attorneys for Plaintiff Ulysses J. Hudson

CASE NO. 05-60985-CIV-Graham/O'Sullivan

## VERIFICATION

Under the penalties of perjury, I declare that I have read the foregoing motion and that, to the best of my knowledge, the facts stated in it are true.

s/ Brian Lerner
Brian Lerner

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Jason Kellogg
Jason Kellogg

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550

CASE NO. 05-60985-CIV-Graham/O'Sullivan

**SERVICE LIST**
**Hudson v. Chertoff**
**Case No. 05-60985-Civ-Graham/O'Sullivan**
**United States District Court, Southern District of Florida**

Ann M. St. Peter-Griffith, Esq.
ann.st.peter-griffith@usdoj.gov
United States Attorney's Office
99 N.E. 4th Street, Suite 300
Miami, Florida 33132.
Telephone: (305) 961-9419
Facsimile: (305) 530-7139
Attorneys for Defendant Michael Chertoff

Via Transmission of Notices of Electronic Filing
Generated by CM/ECF

HOGAN & HARTSON L.L.P., 1111 BRICKELL AVENUE, SUITE 1900 • MIAMI, FL 33131 • TEL. (305) 459-6500 • FAX (305) 459-6550